UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

JASON M. WARE                )
1020 Gadsden Avenue       )
Silver Spring, MD 20905    )
                         )
      Plaintiff,           )      Civil Action No. _____
                         )
v.                        )
                         )
UNITED STATES OF AMERICA,  )
                         )
      Defendant.        )

## COMPLAINT

JASON M. WARE, by counsel, states as follows for his Complaint against the defendant United States of America:

### Jurisdiction and Venue

1.      This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* This Court is vested with jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1346(b).

2.      In compliance with 28 U.S.C. § 2675, Mr. Ware filed a notice of administrative claim with the Department of Veterans Affairs, which is attached as Exhibit A. That claim was received by the Department of Veterans Affairs on March 31, 2014.

3.      The six month period set forth in 28 U.S.C. § 2675(a) has expired.

4.      To the extent applicable to this action, that claim (Ex. A) fully satisfies the notice requirements of D.C. Code § 16-2801 *et seq.*

5.      Accordingly, Mr. Ware's claim is ripe to be litigated in this Court pursuant to 28 U.S.C. § 2675(a).

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because the cause of action arose within the District of Columbia at the Washington, DC Veterans Affairs Medical Center ("Washington VAMC").

<u>Allegations</u>

7.     At all times relevant to this action, Mr. Ware resided in Sandy Springs, Maryland.

8.     At all times relevant to this action, the United States owned and operated the Washington VAMC.

9.     At all times relevant to this action, the agents, servants, employees and personnel of the United States were acting within the course and scope of their employment in providing medical care and treatment to Mr. Ware, a veteran of the United States Armed Forces entitled to such care and treatment.

10.     Mr. Ware was a patient of the Washington VAMC.  Following diagnosis and evaluation of a scaphoid lunate ligament tear in his right wrist, Mr. Ware underwent surgery at the Washington VAMC on July 31, 2013.

11.     The surgery was performed by John R. Barbour, M.D. and was described as "repair of right wrist scaphoid lunate tear, PIN neurectomy."  Of note, the operative report was not dictated by Dr. Barbour until September 16, 2013—nearly two months after the operation.

12.     In the days and weeks following the July 31 operation, Mr. Ware experienced a number of problems with his right wrist, including persistent and increasing pain, migration of the surgical pins, swelling and drainage from the wound site.

13.     On August 23, 2013, Mr. Ware presented to the Plastic Surgery Clinic at the Washington VAMC and an attempt was made to remove the surgical pins.  This procedure was aborted because of Mr. Ware's unacceptable levels of pain.

14.     On September 9, 2013, Mr. Ware was taken to the operating room at the Washington VAMC to undergo the pin removal by Dr. Barbour. Cultures were obtained which subsequently grew out methicillin sensitive staph aureus, or MSSA. A short course of oral antibiotics was prescribed.

15.     Despite two weeks of oral antibiotics, a second set of cultures was obtained on September 24, 2013 at the Washington VAMC, which also came back positive for MSSA.

16.     On October 22, 2013, Mr. Ware again presented to the Plastic Surgery Clinic where it was noted that he had continued drainage from the incision site. No x-rays were obtained to assess for bony changes consistent with infection despite the fact that Mr. Ware had undergone a protracted period of drainage from the surgical wound.

17.     In November 2013, the condition of Mr. Ware's right wrist continued to worsen.

18.     On November 12, 2013, a wrist x-ray was obtained at the Washington VAMC although there was no progress note recorded by Dr. Barbour indicating that Mr. Ware was seen during this time frame.

19.     The x-ray clearly showed changes in the distal radius, distal ulna and carpal bones. There was also a clear loss of fixation of the surgical hardware. All of these changes were consistent with the presence of early osteomyelitis.

20.     Mr. Ware was not seen in follow-up at the Washington VAMC for nearly another month.

21.     When Mr. Ware was eventually seen by Dr. Barbour on December 17, 2013, Mr. Ware reported "complete motion restriction at the wrist" and tightness in the extensor compartments. No physical examination, however, was documented by Dr. Barbour at that visit.

22.    While Dr. Barbour ordered an MRI of Mr. Ware's right wrist on December 17, 2013, no reference was made in the progress note to the x-ray performed in November 2013.

23.    The MRI was performed on December 30, 2013 and revealed a number of concerning findings, including, "a large erosion measuring up to 1.1 cm in diameter of the distal radial epiphysis as well as periosteal reaction involving the volar aspect of the distal radius." There was also edema noted within the adjacent pronator quadratus muscle and subcutaneous edema along the medial aspect of the wrist.  The MRI report stated the "constellation of findings are worrisome for osteomyelitis."

24.    The MRI findings were communicated to Dr. Barbour on January 2, 2014.  Still no antibiotics were prescribed.

25.    On January 6, 2014, Mr. Ware was seen in the Plastic Surgery Clinic by Dr. Barbour who still did not feel that Mr. Ware's picture was consistent with osteomyelitis.  Dr. Barbour instead recommended orthopedic consultation and infectious disease consultation.

26.    On January 10, 2014, Mr. Ware was seen in the Washington VAMC Orthopedic Surgery Clinic.  Those doctors concluded that an infectious process had resulted in the bony destruction seen on the MRI, and recorded that their conclusions would be communicated to Dr. Barbour.  It was recommended that Mr. Ware undergo bone biopsy and debridement. Antibiotics, however, were not prescribed to Mr. Ware.

27.    On January 22, 2014, Mr. Ware was seen in the Plastic Surgery Clinic by Dr. Barbour.  The plan as discussed with Mr. Ware was to explore the joint and remove any contaminated foreign material and wash out the joint.  If there were any areas of softened bone then a bone biopsy would be considered.

28.     On January 28, 2014, Mr. Ware underwent a tenosynovectomy with joint debridement and removal of two free-floating suture anchors as well as manipulation of the joint at the Washington VAMC.  Deep cultures were obtained.  Dr. Barbour's operative report contained no mention of a bone biopsy.

29.     Pathology from the intraoperative deep cultures showed "acute and chronic osteomyelitis."  Remarkably, antibiotics still were not prescribed for Mr. Ware.

30.     On February 3, 2014, Mr. Ware presented to the Washington VAMC Emergency Department with complaints of uncontrolled pain in his right wrist.

31.     Mr. Ware was initially seen by a resident working with Dr. Barbour in the Plastic Surgery Clinic who refused to admit Mr. Ware to the hospital citing that his symptoms "didn't make sense" one week out from surgery.

32.     Dr. Barbour was also contacted the same day and disagreed with the diagnosis of osteomyelitis.  He indicated that Mr. Ware had already been seen earlier that day in the Plastic Surgery Clinic and did not require admission.

33.     Eventually, the Emergency Department at the Washington VAMC admitted Mr. Ware to the hospital's Internal Medicine service.

34.     At that time, Mr. Ware was started on intravenous antibiotics.  Thirty-five days had passed since the MRI revealed the presence of osteomyelitis.

35.     On February 5, 2014, a repeat MRI with and without contrast was ordered by Dr. Graham Lubinsky.  This MRI demonstrated interval worsening of the osteomyelitis of the distal radius with likely involvement of the carpal bones.  Additionally, there was a relatively new tenosynovitis involving the third and fourth extensor tendon compartments.

36.     On February 6, 2014, bloodwork was drawn which revealed a sedimentation rate of 113.

37.     On February 7, 2014, Mr. Ware decided to seek treatment at a private hospital and was discharged from the Washington VAMC.

38.     Through the private sector, Mr. Ware was continued on IV antibiotics via a PICC line at home for six weeks and then underwent a six week course of oral antibiotics.

39.     Mr. Ware was also seen by an outside surgeon who determined that a two-stage procedure to treat the osteomyelitis would be necessary. The first stage would involve extensive debridement of the infected bone. The second stage would be a wrist arthrodesis.

40.     Mr. Ware has undergone both of those procedures. He continues to experience significant pain and disability in his right wrist as a result of Dr. Barbour's and the Washington VAMC's negligent treatment and delayed diagnosis of osteomyelitis.

41.     The fusion of Mr. Ware's right wrist has made it virtually unusable as compared to his condition before undergoing treatment with Dr. Barbour. Moreover, Mr. Ware has developed epicondylitis and tenosynovitis in his left elbow and carpel tunnel syndrome in his left hand and wrist as a result of having to compensate for the loss of use of his right hand, wrist and arm.

42.     Due to the delayed diagnosis and treatment of postoperative osteomyelitis, Mr. Ware has suffered permanent and devastating injuries which will forever impair his ability to work to his full capacity as a registered nurse. In addition to the injury itself, Mr. Ware has been subjected to an unnecessarily long period of pain and suffering which continues even today.

43.     Mr. Ware had no medical conditions prior to this injury which compromised his ability to work.

## Count I – Negligence

44.     Mr. Ware restates and re-alleges paragraphs 1 through 42 as if fully stated herein.

45.     As a provider of medical services to Mr. Ware, the United States and its agents, servants or employees at the Washington VAMC, including Dr. Barbour, owed Mr. Ware a duty to provide him medical care consistent with the governing standard of medical care.

46.     Mr. Ware alleges that the agents, servants or employees of the United States at the Washington VAMC, including Dr. Barbour, while acting within the scope of their employment, violated the applicable standards of medical care by:

   a.     Negligently failing to take appropriate action in the face of Mr. Ware's overall clinical presentation, complaints and test results;

   b.     Negligently failing to order appropriate imaging and laboratory studies in a timely and appropriate manner;

   c.     Negligently failing to order appropriate consultations with Orthopedic Surgery and Infectious Disease in a timely manner;

   d.     Negligently delayed diagnosis of and treatment for osteomyelitis; and

   e.     Committing other negligent acts or omissions before, during and/or after the course of the treatment referenced above as will be developed through additional factual investigation, expert review and discovery.

47.     As a direct and proximate result of the aforementioned negligence of agents, servants and/or employees of the United States, including Dr. Barbour, Mr. Ware was caused to suffer physical injury, pain, mental anguish and physical disability.   He has also incurred economic damages as a result of this negligence.

48.     Accordingly, Mr. Ware claims the following damages:

a.    Compensation for the physical injuries and disabilities he has suffered;

b.    Compensation for his pain, suffering and mental anguish;

c.    Compensation for economic losses he has sustained in the past and can be expected to sustain in the future as a result of these injuries; and

d.    Compensation for any other damages he sustained as a proximate result of the defendant's negligence.

49.    For these damages, Mr. Ware demands $5,000,000.00 (Five Million and 00/100 Dollars) in compensation.

WHEREFORE, Mr. Ware respectfully requests that the Court grant judgment in his favor against the defendant as prayed for above and award him such other relief as is just and equitable under the circumstances.

Respectfully submitted,

JASON M. WARE

By:

Anisa P. Kelley
DC Bar No. 440128
RAWLS McNELIS + MITCHELL, PC
11325 Random Hills Road, Suite 340
Fairfax, VA 22030
Phone: (703) 268-5856
Facsimile: (804) 272-3603
akelley@rawlsmcnelis.com
*Counsel for Plaintiff*